IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
UNITED STATES OF AMERICA ex rel.   )
RHONDA SALMERON, Relator,          )
                                   )
            Plaintiff,             )
                                   )
    v.                             )   No.  05 C 4453
                                   )
ENTERPRISE RECOVERY SYSTEMS, INC., )
                                   )
            Defendant.             )
```

MEMORANDUM OPINION AND ORDER

United Student Aid Funds, Inc. ("Funds") has moved for its dismissal as a newly-added defendant in this qui tam action brought by relator Rhonda Salmeron ("Salmeron"). Funds bases its motion on (1) Salmeron's asserted failure to plead fraud under the False Claims Act ("Act," 31 U.S.C. §3729(a))[1] with the specificity required by Fed. R. Civ. P ("Rule") 9(b) and (2) her claimed failure to state a claim upon which relief can be granted in violation of Rule 12(b)(6). For the reasons set forth in this memorandum opinion and order, Funds' motion is denied.

Because of the nature of both aspects of Funds' motion, this opinion necessarily accepts Salmeron's allegations as true. What follows, then, need not repeat such qualifying language as "Salmeron claims" or the like--without, of course, this Court's making or implying any factual findings. Allegations in

---

[1] Further citations to the Act will take the form "Section--," omitting the prefatory "31 U.S.C." Citations to the Act's implementing regulations in 34 C.F.R. will take the form "Reg. §--," similarly omitting the prefatory "34 C.F.R."

Salmeron's First Amended Complaint will be cited "FAC ¶--."

<u>     </u>                    <u>Salmeron's Claims</u>

Salmeron's action, brought on behalf of the United States, alleges false statements, false claims and the creation of false records made and submitted directly or indirectly by Enterprise Recovery Systems ("Enterprise") and Funds to the United States government in violation of the Act (FAC ¶1). Funds is an entity that guarantees student loans for both state and private lenders (<u>id</u>. ¶5).

As part of its guaranty services, Funds often contracts with other agencies that act as third-party servicers performing due diligence on Funds' accounts (FAC ¶5). Enterprise is one such third-party servicer (see the definition in Reg. §668.2[2]) for the United States Department of Education (<u>id</u>. ¶3). Enterprise has contracts with various educational institutions and is required to submit annual compliance reports to the Secretary of Education (<u>id</u>. ¶4). Funds entered into an agreement with Enterprise under

---

[2] Reg. §668.2 reads in relevant part:

> Third-party servicer: (1) An Individual or a State, or a private, profit or nonprofit organization that enters into a contract with an eligible institution to administer, through either manual or automated processing, any aspect of the institution's participation in any Title IV, HEA program.

Among the functions included in that definition are "Processing student financial aid applications...Loan servicing and collection" (<u>id</u>.).

which Enterprise agreed to perform due diligence and collect on defaulted loans for Funds' accounts (id. ¶¶5-6).

To maintain its contract with Funds, Enterprise was subjected to an annual audit performed by Funds, designed to monitor Enterprise's success at communicating with debtors and collecting on outstanding loans (FAC ¶¶10, 12). To pass those annual audits Enterprise created false records of the contacts it made with debtors (id. ¶12). And to facilitate that scheme Funds would in turn let Enterprise know in advance which accounts it would be inspecting, a benefit that no other third-party servicer received (id. ¶¶36-37).

Thus having knowledge of which accounts would be audited, Enterprise was enabled to falsify data on those accounts to create the false appearance that due diligence had been performed (FAC ¶34). For its part, Funds used the falsified records provided by Enterprise as the basis for claiming payment from the Government, despite its awareness that Enterprise had the ability to enter false or postdated due dates for payments on accounts going through consolidation or rehabilitation (id. ¶¶13, 39).

Salmeron worked as a general manager for Enterprise from 1998 through July 2002 (FAC ¶24). On October 28, 1999 Salmeron discovered that Enterprise was "engaged in [that] pattern or practice of falsifying activities on accounts, including telephone calls not made, and skip trace activity not in fact

3

performed" (id. ¶28). Because of her position within Enterprise, Salmeron has information to support her belief that Funds has made claims for fees based on Enterprise's false or fraudulent audit results (id. ¶40).

Salmeron filed her original Complaint on August 4, 2005 solely against Enterprise. Then on September 7, 2006 she filed the FAC to add Funds as a party.

### Dismissal Pursuant to Rule 9(b)

While Rule 9(b) does apply to Act claims, and while there is a good deal of caselaw that speaks of a journalistic-type approach to its requirement of pleading "with particularity," that locution really does not fit well in dealing with extended fraudulent schemes involving a large volume of transactions--it must be remembered that what Rule 9(b) mandates particularity about are "the circumstances constituting fraud." Hence such cases as Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992) have held that a plaintiff is required to provide only a "general outline" of the alleged scheme sufficient to put defendants on notice about their roles in the fraudulent or false activity. To serve the well-known goals of Rule 9(b), plaintiff must provide fair notice (see Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777-78 (7th Cir. 1994)) by supplying just such a general outline of the "circumstances constituting fraud"--in this instance the very matters that have been recited

4

here under the heading Salmeron's Claims.

Salmeron has sufficiently adumbrated the scheme at issue in the FAC to survive Funds' dismissal motion. She has alleged that starting in October 1999 she became aware of the scheme between Enterprise and Funds under which Funds would let Enterprise know in advance which accounts it would audit, enabling Enterprise to doctor those accounts to reflect purported compliance with both its contractual terms and Government regulations. Salmeron's position within Enterprise gave her access to information about the scheme, and she further deduced that Funds submitted reports based on the false information provided by Enterprise, allowing Funds to receive money from the Government under the auspices of those false pretenses. That description of the predicate acts constituting fraud suffices to put Funds on notice of the claims she is advancing, as well as informing it of what it would have to do to mount a defense.

To require Salmeron to provide more detail at the pleading stage would be unrealistically demanding. Instead both she and Funds will be able to proceed to discovery to flesh out the chapter-and-verse details. In sum, Funds' motion to dismiss based on the asserted failure on Salmeron's part to plead with particularity under Rule 9(b) is denied.

## Violation of the Act

This Court likewise does not agree with Funds that Salmeron

has failed to state a valid claim against it for violation of the Act. Under Section 3729(a) a relator may allege that a party is liable if it:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval; [or]
>
> (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government....

As already discussed, Salmeron has alleged that Funds knowingly used false or fraudulent reports generated by Enterprise to obtain payment from the Government. That allegation, which must be accepted for Rule 12(b)(6) purposes, suffices to target Funds under both of those numbered prongs. Funds' motion to dismiss for failure to state a claim under the Act is denied as well.

<u>Potential Time Bar of Salmeron's Claims</u>

Finally, as to Funds' contention that Salmeron's claim is time barred, nothing more is needed for its rejection than to read the applicable provision of the Act and to apply its plain terms. Section 3731(b) provides (emphasis added):

> (b) A civil action under section 3730 may not be brought--
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by <u>the official of the United States charged with responsibility</u>

6

>           <u>to act in the circumstances</u>, but in no event more
>           than 10 years after the date on which the
>           violation is committed,
>
> whichever occurs last.

Funds would have this Court read that provision as providing a six-year statute of limitations for lawsuits under the Act, essentially ignoring alternative (2)(remember that it is the <u>later</u> of the two alternatives that establishes the time bar). To that end it invokes the Ninth Circuit's decision in <u>United States ex rel. Hyatt v. Northrop Corp.</u>, 91 F.3d 1211, 1216-18 (9th Cir. 1996) and two unpublished opinions by colleagues of this Court, <u>United States ex rel. Bidani v. Lewis</u>, No. 97 C 6502, 1998 WL 1820753, at *10 (N.D. Ill. Dec. 29) and <u>United States ex rel. King v. F.E. Morgan, Inc.</u>, No. 00 C 3877, 2002 WL 2003219, at *13 (N.D. Ill. Aug. 29).

With all respect, <u>Hyatt</u> reads like a conjurer's trick. It points to the purpose of Section 3731(b)(2) as a tolling provision (91 F.3d at 1214-16), then proceeds to read it as though it were a judicially created equitable doctrine rather than a congressional enactment that must be read in accordance with its plain language. Despite the opinion's unexceptionable opening statement that "[i]n statutory interpretation, the starting point is always the language of the statute itself" (<u>id</u>. at 1213), the court's "equitable tolling" sleight of hand somehow converts the qui tam plaintiff-- a private person such as relator

7

Hyatt in that case and relator Salmeron here--into "the <u>official of the United States</u> charged with responsibility to act in the circumstances."

"Official of the United States" indeed! It was the ultimate conjurers, the alchemists of the Middle Ages, who similarly sought to transmute base metals into gold. After all, before a private relator can bring a qui tam action at all, he or she is required to give the true officials of the United States the opportunity to pursue the claim. It is only when those <u>officials</u> decline that opportunity that the <u>private</u> <u>party</u> can go forward with the lawsuit. That cannot fairly be said to transmute that private party into a governmental "official" in any real-world sense of that term.

This Court will not join in such judicial legislation. In this instance Salmeron first filed her original Complaint in August 2005, a filing that triggered the three-year period under Section 3731(b)(2), for it was only then that any official of the United States (for the Government had no prior knowledge of the scheme alleged in the Complaint) could be charged with having known, or having had reason to know about, the violations. In sum, Funds' motion to dismiss Salmeron's claims as time-barred is also denied.

<u>Conclusion</u>

For the reasons stated in this opinion, Funds' motion for

its dismissal from the SAC is denied. It is ordered to answer the FAC on or before December 15, 2006 and thereafter to proceed expeditiously with the discovery process (this action has previously been set for a next status hearing at 8:45 a.m. February 2, 2007).

_____
Milton I. Shadur
Senior United States District Judge

Date:  November 30, 2006